UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA WASHINGTON,<br><br>        Plaintiff,<br><br>v.<br><br>CALIFORNIA CITY CORRECTION CENTER,<br>JOHN GUZMAN; AND DOES 1 TO 20,<br><br>        Defendants. | 1:10-cv-02031 OWW JLT<br><br>MEMORANDUM DECISION AND ORDER<br>RE DEFENDANT'S MOTION TO<br>DISMISS COMPLAINT<br><br>(DOC. 7) |

## I. INTRODUCTION

Plaintiff Anita Washington ("Plaintiff") proceeds with this action for damages against CCA of Tennessee, LLC ("CCA") (incorrectly sued as California City Correction Center) and John Guzman.

On November 5, 2011, CCA filed a Motion to Dismiss the Complaint. Doc. 7. Plaintiff filed an Opposition on January 11, 2011 (Doc. 10), one day late.

## II. BACKGROUND

This action arises from alleged racial discrimination and retaliation engaged in by CCA, Plaintiff's former employer, and Mr. Guzman, CCA's Chief of Security and Plaintiff's former supervisor at CCA.

On August 21, 2000, Plaintiff began her employment with CCA as a Correction Officer. Doc. 1, Ex.1 ¶ 1. Plaintiff was promoted to Sergeant in 2001. *Id.* The Complaint alleges that: in 2004, Mr.

1

Guzman communicated his dislike of Plaintiff because of her race
and was "continuously abusive" to Plaintiff (Doc. 1, Ex.1 ¶ 8);
Mr. Guzman told Plaintiff to find another job after Plaintiff
complained to Mr. Guzman about racial harassment (*Id.*); Mr.
Guzman told Plaintiff that her co-workers were complaining about
working with Plaintiff and turned the transport staff against
Plaintiff (*Id.* at ¶¶ 8-9); Mr. Guzman removed Plaintiff from
airlift trips and put Plaintiff in charge of medical runs,
scheduling and paperwork as a set up to terminate Plaintiff's
employment (*Id.* at ¶ 9); Plaintiff was demoted to Corrections
Officer (*Id.* at ¶ 10); Plaintiff was subjected to retaliation in
the form of false accusations of an inappropriate relationship
with an inmate (*Id.*); and Plaintiff was terminated because of the
false allegations motivated by racial discrimination and
retaliation (*Id.*).

On or about January 27, 2009, Plaintiff filed a Charge of
Discrimination with the California Department of Fair Employment
and Housing ("DFEH") based on retaliation. *Id.* at ¶ 11. On or
about January 29, 2009, DFEH issued Plaintiff a Notice of Right
to Sue. *Id.* at ¶ 12. On August 31, 2009, Plaintiff filed an
action in state court. Doc. 1, Ex. 1. On October 29, 2010, CCA
removed the action to federal court based on diversity of
citizenship between the parties. Doc. 1.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). A complaint does not need detailed factual allegations, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss, the court should assume the veracity of "well-pleaded factual allegations," but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 127 S.Ct. at 1950. "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'Naked assertion[s]' devoid of 'further factual enhancement'" are also insufficient. *Iqbal*, 127 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint must contain enough facts to state a claim to relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

A claim has facial plausibility when the complaint's factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 127 S.Ct. at 1949. "The plausibility standard is not akin to a

3

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).

The Ninth Circuit summarizes the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)(quotations omitted).

If a district court considers evidence outside the pleadings, a Rule 12(b)(6) motion to dismiss must be converted to a Rule 56 motion for summary judgment, and the nonmoving party must be given an opportunity to respond. *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

1

### IV. DISCUSSION

2

**A. First Cause of Action: Violation of Cal. Gov't Code § 12940**

3

4

CCA moves to dismiss Plaintiff's first cause of action for

5

violation of the Fair Employment and Housing Act ("FEHA"), Cal.

6

Gov't Code § 12940. CCA contends that the first cause of action

7

fails because the Complaint does not allege discriminatory intent

8

or specific facts that CCA took any personnel action based on

9

Plaintiff's protected classification.

10

It is recognized that "direct evidence of intentional

11

discrimination is rare, and that such claims must usually be

12

proved circumstantially." *Scotch v. Art Inst. Of Cal.-Orange*

13

*Cnty., Inc.*, 173 Cal.App.4th 986, 1004, 93 Cal.Rptr.3d 338 (2009).

14

As a result, California applies the *McDonnell Douglas* test, a

15

three-stage burden-shifting test established by the United States

16

Supreme Court, to claims of discrimination based on a theory of

17

disparate treatment. *Id.*; *Guz v. Bechtel Nat., Inc.*, 24 Cal.4th

18

317, 354, 8 P.3d 1089 (2000). "By successive steps of

19

increasingly narrow focus, the test allows discrimination to be

20

inferred from facts that create a reasonable likelihood of bias

21

and are not satisfactorily explained." *Id.*

22

23

The first step of the *McDonnell Douglas* test places the

24

initial burden on the plaintiff to establish a prima facie case

25

of discrimination. *Id.* A prima facie case of employment

26

discrimination under FEHA requires the plaintiff to show that:

27

28

"(1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held, (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests a discriminatory motive." *Scotch*, 173 Cal.App.4th at 1004. If the plaintiff establishes a prima facie case, there is a presumption of discrimination, and the burden shifts to the employer to rebut the presumption by producing admissible evidence sufficient to raise a genuine issue of material fact the employer took its actions for a legitimate, nondiscriminatory reason. *Guz*, 24 Cal.4th at 355-356. If the employer meets that burden, the presumption of discrimination disappears, and the plaintiff must challenge the employer's proffered reasons as pretexts for discrimination or offer other evidence of a discriminatory motive. *Id.*

Under the first step of the *McDonnell Douglas* test, Plaintiff need only establish a prima facie case of discrimination. As to prong 1, CCA asserts that the Complaint fails to specify Plaintiff's race. The Complaint alleges that "Defendants discriminated and retaliated against [Plaintiff] because of her race and for complaining about race discrimination during the course of her employment." Doc. 1, Ex. 1 ¶ 7. The Opposition clarifies that Plaintiff's race is "Black." Doc. 10,

6

5:13. These allegations sufficiently allege that Plaintiff is a member of a protected class because of her race. However, the Plaintiff will be granted leave to amend the Complaint to allege her protected class with more specificity. As to prong 2, the Complaint alleges that "[d]uring the course of her employment with Defendant, Plaintiff performed each and every condition and covenant required on her part to be performed pursuant to said employment agreement." Doc. 1, Ex. 1 ¶ 5. As to prong 3, the Complaint alleges that Plaintiff was removed from airlift trips and put in charge of medical runs, scheduling and paperwork; demoted to Corrections Officer; and terminated. As to prong 4, the Complaint sufficiently alleges other circumstances that suggest a discriminatory intent and discriminatory action, including that Mr. Guzman communicated his dislike of Plaintiff because of her race and was continuously abusive to Plaintiff and that Plaintiff complained to Mr. Guzman about his racial discrimination towards her. Accepted as true, the Complaint sufficiently alleges a claim for relief for discrimination under the FEHA.

   CCA's motion to dismiss Plaintiff's first cause of action is DENIED. Plaintiff is GRANTED LEAVE TO AMEND the first cause of action.

   **B. Second Cause of Action: Discharge in Violation of Public Policy (Cal. Gov't Code § 12920)**

      CCA moves to dismiss Plaintiff's second cause of action for

discharge in violation of public policy. CCA contends that the

second cause of action is superfluous to the first cause of

action under FEHA and that Plaintiff cannot concurrently file a

statutory claim and a common law claim predicated on the same

violations. This contention is belied by express legal authority.

Section 12993(a) of the California Government Code provides:

> The provisions of this part shall be construed liberally for
> the accomplishment of the purposes of this part. Nothing
> contained in this part shall be deemed to repeal any of the
> provisions of the Civil Rights Law or of any other law of
> this state relating to discrimination because of race,
> religious creed, color, national origin, ancestry, physical
> disability, mental disability, medical condition, marital
> status, sex, age, or sexual orientation, unless those
> provisions provide less protection to the enumerated classes
> of persons covered under this part.

Cal. Gov't Code § 12993(a). In *Rojo v. Kliger*, 52 Cal.3d 65, 82,

276 Cal.Rptr. 130 (1990), the California Supreme Court held that

"FEHA does not displace any causes of action and remedies that

are otherwise available to plaintiffs." "The FEHA was meant to

supplement, not supplant or be supplanted by, existing

antidiscrimination remedies, in order to give employees the

maximum opportunity to vindicate their civil rights against

discrimination." *Id.* at 74-75 (quoting *State Pers. Bd. v. Fair

Emp't & Hous. Comm'n*., 39 Cal.3d 422, 431 (1985)). The *Rojo* court

further held that a plaintiff may pursue relief under FEHA and

common law either sequentially or simultaneously:

> We conclude, therefore, that although an employee must
> exhaust the FEHA administrative remedy before bringing suit

on a cause of action under the act or seeking the relief provided therein, exhaustion is not required before filing a civil action for damages alleging nonstatutory causes of action. An employee, of course, may elect to waive the statutory cause of action and remedies, and proceed directly to court on the common law claims; alternatively, the employee may pursue both the administrative and the judicial avenues, either sequentially or simultaneously, in the latter case amending his or her complaint to join the FEHA cause of action once the Department has issued the right-to-sue letter.

*Rojo*, 52 Cal.3d at 88 (internal citations omitted).

CCA's motion to dismiss Plaintiff's second cause of action is DENIED.

C. <u>Third Cause of Action: Failure to Prevent Discrimination (Cal. Gov't Code § 12940)</u>

CCA moves to dismiss Plaintiff's third cause of action for failure to prevent discrimination in violation of FEHA. Citing *Trujillo v. North County Transit District*, 63 Cal.App.4th 280, 289 (1998), CCA contends that in the absence of a viable claim of discrimination, no liability may be imposed on an employer for failure to prevent discrimination. CCA requests that if the court grants CCA's motion to dismiss Plaintiff's first cause of action for discrimination, that it also grants CCA's motion to dismiss Plaintiff's third cause of action.

The Complaint sufficiently alleges employment discrimination, and CCA's motion to dismiss Plaintiff's first cause of action is denied. Accordingly, CCA's motion to dismiss Plaintiff's third cause of action is DENIED.

9

D.  **Fourth Cause of Action: Retaliation (Cal. Gov't. Code §**

**12940(f))**

CCA does not move to dismiss Plaintiff's fourth cause of

action for retaliation under California Government Code §

12940(f). California Government Code § 12940(f) pertains to

medical and psychological examinations and inquiries, not

retaliation. Although the claim is not attacked and therefore

remains intact, it does not reference any applicable Section of

the California Government Code. Plaintiff is GRANTED LEAVE TO

AMEND the fourth cause of action.

E.  **Fifth Cause of Action: Intentional Infliction of Emotional**
    **Distress**

CCA advances two arguments for dismissal of Plaintiff's

claim for intentional infliction of emotional distress: (1) it is

barred by the exclusive remedy of the Workers' Compensation Act

("WCA"); and (2) the Complaint does not allege extreme and

outrageous conduct.

1.  **California Worker's Compensation Act**

The WCA provides that worker's compensation liability "in

lieu of any other liability whatsoever to any person . . . shall,

without regard to negligence, exist against an employer for any

injury sustained by his or her employees arising out of and in

the course of the employment . . . ." Cal. Lab. Code § 3600. The

WCA is generally the "exclusive" remedy for claims against co-

employees (Cal. Lab. Code § 3601) and the "sole and exclusive

remedy" for claims against employers (Cal. Lab. Code § 3602).

The WCA is not a bar where "the employer's conduct [ ] contravenes fundamental public policy." *Livitsanos v. Superior Court*, 2 Cal.4th 744, 754, 7 Cal.Rptr.2d 808 (1992) (internal quotations and citations omitted); see also *Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 1100, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992), *overruled on other grounds*, *Green v. Ralee Eng'g Co.*, 19 Cal.4th 66, 78 Cal.Rptr.2d 16 (1998) ("When an employer's decision to terminate an employee results from an animus that violates the fundamental policy of this state proscribing any interference in the official investigation of sexual harassment, such misconduct cannot under any reasonable viewpoint be considered a normal part of the employment relationship.") (internal quotations and citations omitted).

Here, Plaintiff alleges racial discrimination and termination in retaliation for protesting racial discrimination, which violates fundamental public policy. The WCA does not preempt Plaintiff's claims for intentional infliction of emotional distress.

CCA's motion to dismiss the fifth cause of action as barred by the WCA is DENIED.

2. Intentional Infliction of Emotional Distress

A cause of action for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct

11

by the defendant with the intention of causing, or reckless

disregard of the probability of causing, emotional distress; (2)

the plaintiff's suffering severe or extreme emotional distress;

and (3) actual and proximate causation of the emotional distress

by the defendant's outrageous conduct." *Hughes v. Pair*, 46

Cal.4th 1035, 1050, 95 Cal.Rptr.3d 636 (2009) (internal

quotations and citation omitted). A defendant's conduct is

"outrageous" when it is so "extreme as to exceed all bounds of

that usually tolerated in a civilized community." *Id*. at 1051.

The defendant's conduct must also be "intended to inflict injury

or engaged in with the realization that injury will result." *Id*.

Defendant contends that Plaintiff fails to allege extreme

and outrageous conduct because the alleged conduct falls within

the ambit of personnel management actions, which are not

"outrageous" as a matter of law. In support, Defendant cites

*Janken v. GM Hughes Electronics*, 46 Cal.App.4[th] 55, 80, 53

Cal.Rptr.2d 741 (1996):

> Managing personnel is not outrageous conduct beyond the
> bounds of human decency, but rather conduct essential to the
> welfare and prosperity of society. A simple pleading of
> personnel management activity is insufficient to support a
> claim of intentional infliction of emotional distress, even
> if improper motivation is alleged. If personnel management
> decisions are improperly motivated, the remedy is a suit
> against the employer for discrimination.

Defendant also cites two non-precedential cases that followed

*Janken*: *Hegelson v. American International Group, Inc.*, 44

F.Supp.2d 1091 (S.D. Cal. 1999)("All of the actions submitted by

12

plaintiff are every-day management decisions. Performance reviews, counseling sessions, lay-off decisions, and work assignments are all decisions that businesses make every day. . . . Even if these decisions were improperly motivated, they fall far short of the necessary standard of outrageous conduct beyond all bounds of decency.") and *Bartalini v. Blockbuster Entertainment, Inc.*, 1999 WL 1012383, *1 (N.D. Cal. 1999)(holding that low bonus and poor performance review, treatment in a rude and condescending manner, failure to show up for scheduled appointments, and terminating an employee for failure to correct a break problem are socially unacceptable, but does not rise to the level of outrageous conduct).

Plaintiff neither addresses Defendant's cited cases nor distinguishes Defendant's alleged conduct from situations involving everyday management decisions. Under *Janken*, most of Plaintiff's allegations are "personnel management decisions" and cannot be considered "extreme or outrageous" for purposes of establishing intentional infliction of emotional distress. *See Janken*, 46 Cal. App.4th at 80.

The Complaint contains one allegation that potentially gives rise to "extreme and outrageous conduct": the allegation that Mr. Guzman communicated his dislike of Plaintiff because of her race and was "continuously abusive" to Plaintiff. Complaint ¶ 8. Courts have found racial slurs and epithets sufficient to

constitute intentional infliction of emotional distress. *See*

*Robinson v. Hewlett-Packard Corp.*, 183 Cal.App.3d 1108, 1129-

1130, 228 Cal.Rptr. 591 (1986)(finding summary judgment on

intentional infliction of emotional distress claim inappropriate

because use of racial slurs may constitute outrageous conduct);

*Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 498-499, 86 Cal.Rptr.

88 (1970)(holding that complaint states a cause of action for

intentional infliction of emotional distress where supervisor

fired African-American employee while shouting various racial

epithets). The Complaint contains marginally sufficient factual

allegations of extreme and outrageous conduct of racial

discrimination to survive a motion to dismiss.

CCA's motion to dismiss Plaintiff's fifth cause of action is

DENIED.

F. <u>Sixth Cause of Action: Defamation</u>

CCA advances three arguments to support dismissal of

Plaintiff's claim for defamation: (1) the exclusive remedy of the

WCA; (2) the Complaint does not sufficiently allege defamation;

and (3) it is barred by privilege under California Civil Code §

47(c).

1. <u>California Workers' Compensation Act</u>

The WCA provides that worker's compensation liability "in

lieu of any other liability whatsoever to any person . . . shall,

without regard to negligence, exist against an employer for any

14

injury sustained by his or her employees arising out of and in the course of the employment . . . ." Cal. Lab. Code § 3600. The WCA is generally the "exclusive" remedy for claims against co-employees (Cal. Lab. Code § 3601) and the "sole and exclusive remedy" for claims against employers (Cal. Lab. Code § 3602).

Citing *Robomatic, Inc. v. Vetco Offshore*, 225 Cal.App.3d 270, 275 Cal.Rptr. 70 (1990), CCA contends that courts examining the effect of the WCA's exclusivity on intentional torts have concluded that the WCA bars claims for defamation. The *Robomatic* court, however, held that the WCA was the exclusive remedy for negligent infliction of emotional distress ensuing from dismissal of employment; it does not discuss whether the WCA precludes defamation claims. *Id.* at 274.

"[W]hile the Supreme Court has not explicitly passed on this question, its opinions to date and decisions of the Courts of Appeal all indicate that the Workers' Compensation Act does not preclude a civil action for defamation against one's employer . . . . ." *Operating Eng'rs Local 3 v. Johnson*, 110 Cal.App.4[th] 180, 186-187, 1 Cal.Rptr.3d 552 (2003). In *Vacanti v. State Compensation Insurance Fund*, 24 Cal.4[th] 800, 814, 102 Cal.Rptr.2d 562 (2001), the California Supreme Court observed that "courts have exempted defamation claims from exclusivity because an injury to reputation does not depend on a personal injury." *See also Howland v. Balma*, 143 Cal.App.3d 899, 904-905, 192 Cal.Rptr.

286 (1983)(holding that slander action against former employer was not barred by exclusive provisions of WCA; gist of slander action is damage to reputation, which it not a "personal injury" (i.e., medical or personal injury to the body) or a risk of employment within the purview of the WCA); *Livitsanos v. Superior Court*, 2 Cal.4th 744, 757 n.9, 7 Cal.Rptr.2d 808 (1992)(observing that "[a] number of courts have apparently determined that the gravamen of an action for libel or slander is damage to "reputation," a "proprietary" as distinct from a physical or mental injury, and therefore have concluded that defamation does not lie within the purview of the workers' compensation law). The WCA does not bar Plaintiff's claim for defamation.

CCA's motion to dismiss Plaintiff's sixth cause of action on grounds of WCA exclusivity is DENIED.

2. Defamation

Defamation can take the form of slander or libel. Cal. Civ. Code § 44. Slander is an oral, unprivileged communication by radio or any mechanical or other means which:

1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;

2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;

3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;

16

4. Imputes to him impotence or a want of chastity; or

5. Which, by natural consequence, causes actual damage.

Cal. Civ. Code § 46. Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye. Cal. Civ. Code § 45. A statement is libelous per se if it defames the plaintiff on its face, that is, without the need of extrinsic evidence to explain the statement's defamatory nature. Cal. Civ. Code § 45a.

CCA contends that Plaintiff's defamation claim is not pled with the requisite specificity. The Complaint alleges that Plaintiff was subject to "false accusations of inappropriate relationship with an inmate and giving away equal or value to an inmate." Doc. 1, Ex. 1 ¶ 10. The Complaint does not provide additional detail about these allegations, including whether they were made orally or through written publication to qualify as slander or libel.

CCA's motion to dismiss Plaintiff's fifth cause of action for lack of specificity is GRANTED WITHOUT PREJUDICE. Plaintiff is GRANTED LEAVE TO AMEND the fifth cause of action to properly allege a claim for defamation.

    3. <u>California Civil Code § 47(c)</u>

"An employer has a qualified privilege of communication to a listener with a common interest." *Robomatic, Inc. v. Vetco Offshore*, 225 Cal.App.3d 270, 276, 275 Cal.Rptr. 70 (1990).

California Civil Code § 47(c) provides in pertinent part:

> A privileged publication or broadcast is one made: In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant.

Cal. Civ. Code § 47(c).

To defeat this privilege, a plaintiff must specifically allege malice. *Robomatic,* 225 Cal.App.3d 270 at 276. "[M]alice is not inferred from the communication." Cal. Civ. Code § 48. "The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Noel v. River Hills Wilsons, Inc.*, 113 Cal.App.4th 1363, 1370, 7 Cal.Rptr.3d 216 (2003)(quoting *Sanborn v. Chronicle Pub. Co.*, 18 Cal.3d 406, 413, 134 Cal.Rptr. 402 (1976)). Mere negligence is not enough to constitute malice. "It is only when the negligence amounts to a reckless or wanton disregard for the truth, so as to reasonably imply a willful disregard for or avoidance of accuracy, that

18

malice is shown." *Noel*, 113 Cal.App.4[th] at 1371 (quoting *Roemer v. Retail Credit Co.*, 3 Cal.App.3d 368, 371-372, 83 Cal.Rptr. 540 (1970).

The Complaint contains detailed allegations of Defendants' ill will towards Plaintiff, including that Mr. Guzman "communicated his dislike for Plaintiff because of her race and was continuously abusive of Plaintiff." Doc. 1, Ex. 1 ¶ 8. The Complaint also alleges that the inmate allegedly had sexual relations with someone named Ana, and that although Plaintiff's name is Anita, she was singled out for investigations and harassment. *Id.* at ¶ 10. Whether California Civil Code § 47(c)'s qualified privilege applies is a question of fact and will be subject to proof. The Complaint sufficiently alleges malice to survive a claim of privilege under California Civil Code § 47(c) on a motion to dismiss.

CCA's motion to dismiss Plaintiff's sixth cause of action on privilege grounds is DENIED.

G. <u>Motion to Strike Punitive Damages</u>

The Complaint, in its concluding prayer for relief, seeks "punitive damages against Defendant in an amount to be proven at trial." Doc. 1, Ex. 1 at 8. CCA moves to dismiss Plaintiff's claim for punitive damages, contending that the Complaint fails to plead facts sufficient to support a claim of punitive damages. CCA's motion to dismiss this allegation may be treated as a

motion to strike. *Demoura v. Ford*, 2010 WL 2673865, *5 (E.D. Cal. 2010). In her Opposition, Plaintiff does not address CCA's motion to dismiss the claim for punitive damages.

Rule 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored and infrequently granted. *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1170 (E.D. Cal. 2005). A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Id*. The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that might arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

It is well settled that California's punitive damages statute, Civil Code § 3294, applies to actions brought under FEHA. *Weeks v. Baker & McKenzie*, 63 Cal.App.4[th] 1128, 1147-1148, 74 Cal.Rptr.2d 510 (1998).

California Civil Code § 3294 provides in pertinent part:

> (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for

the sake of example and by way of punishing the defendant.

(b)     An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Cal. Civ. Code § 3294.[1]

An employer may be liable for punitive damages in an action arising from the tortious conduct of its employee in three situations: "(1) when an employee was guilty of oppression, fraud or malice, and the employer with advance knowledge of the unfitness of the employee employed him or her with a conscious disregard of the rights or safety of others, (2) when an employee was guilty of oppression, fraud or malice, and the employer authorized or ratified the wrongful conduct, or (3) when the

_____

[1] Civil Code Section 3294(c) defines "malice," "oppression," and "fraud" as follows:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

employer was itself guilty of the oppression, fraud or malice."
*Weeks*, 63 Cal.App.4th at 1151; *see also Mitchell v. Keith*, 752
F.2d 385, 390 (9th Cir. 1985)("Under California law, an employer
may be made to pay punitive damages based upon the acts of an
employee, where the employer (1) authorized the acts, (2)
ratified the acts, (3) knowingly or recklessly employed an unfit
employee, or (4) employed the person, who did the wrongful acts
in the scope of employment, in a managerial capacity."). For
corporate employers, such as CCA, the advance knowledge and
conscious disregard, authorization, ratification or act of
oppression, fraud, or malice must be on the part of an officer,
director, or managing agent of the corporation. *See* Cal. Civ.
Code § 3294(b).

CCA contends that punitive damages may not be pleaded
generally and that specific factual allegations are required to
support a claim for punitive damages. *See Brousseau v. Jarrett*,
73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977)(holding that
complaint's conclusory characterization of defendant's conduct as
"intentional, willful and fraudulent" was patently insufficient
to support claim for punitive damages). As federal standards
govern the pleading requirements applicable to this diversity
proceeding, Plaintiff's claim for punitive damages will be
reviewed applying the pleading standards set forth in *Twombly* and

*Iqbal. Kelley v. Corrections Corp. of Amer.*, --- F.Supp.2d ---, *12-13, 2010 WL 3853182 (E.D. Cal. 2010).

The Complaint alleges acts of racial discrimination and retaliation by Mr. Guzman, CCA's Chief of Security, which are indicative of malice and oppression. The Complaint alleges that Plaintiff discussed the situation with the Warden, who in turn had a conversation with Mr. Guzman. Doc. 1 Ex. 1 ¶ 8. Whether the Chief of Security and/or Warden is an "officer, director, or managing agent" of CCA is a question of fact and will be subject to proof. The Complaint alleges that "Defendants authorized and/or ratified the conduct of Guzman by retaining him after learning of his conduct toward Plaintiff and failing and refusing to discipline or reprimand him." Doc. 1, Ex. 1 ¶ 24. The Complaint must allege that Mr. Guzman, the Warden, or someone else who was an officer, director, or managing agent of CCA had the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice.

CCA's motion to strike Plaintiff's claim for punitive damages is GRANTED WITH LEAVE TO AMEND.

<u>V. CONCLUSION</u>

For the reasons stated:

1. CCA's motion to dismiss is GRANTED in part and DENIED in part, as follows.

    a. CCA's motion to dismiss Plaintiff's first cause of

action is DENIED. Plaintiff is GRANTED LEAVE TO AMEND the first cause of action.

b. CCA's motion to dismiss Plaintiff's second cause of action is DENIED.

c. CCA's motion to dismiss Plaintiff's third cause of action is DENIED.

d. Plaintiff is GRANTED LEAVE TO AMEND the fourth cause of action.

e. CCA's motion to dismiss Plaintiff's fifth cause of action is DENIED.

f. CCA's motion to dismiss Plaintiff's sixth cause of action is GRANTED WITHOUT PREJUDICE. Plaintiff is GRANTED LEAVE TO AMEND the sixth cause of action.

g. CCA's motion to dismiss Plaintiff's claim for punitive damages is GRANTED WITHOUT PREJUDICE. Plaintiff is GRANTED LEAVE TO AMEND Plaintiff's claim for punitive damages.

2. Plaintiff shall submit a proposed form of order consistent with this memorandum decision within five (5) days of electronic service of this memorandum decision.

SO ORDERED.

DATED:   January 31, 2011

                                    /s/ Oliver W. Wanger
                                 Oliver W. Wanger
                              United States District Judge