# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANITA WASHINGTON, | ) | 1:10-cv-02031-AWI-JLT |
| | ) | |
| Plaintiff, | ) | **ORDER RE: MOTION FOR** |
| | ) | **SUMMARY JUDGMENT OR** |
| v. | ) | **SUMMARY ADJUDICATION** |
| | ) | |
| CALIFORNIA CITY CORRECTION | ) | (Docs. 45-47) |
| CENTER; CCA OF TENNESSEE, | ) | |
| LLC; and DOES 1 to 20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I. INTRODUCTION

Defendant CCA of Tennessee, LLC (erroneously sued as California City Correction Center) has filed a motion for summary judgment or summary adjudication in the alternative pursuant to Federal Rule of Civil Procedure 56.  For reasons discussed below, summary adjudication shall be granted as to the second and fourth causes of action for wrongful termination in violation of public policy and retaliation; summary adjudication shall be denied as to the first, third and fifth causes of action for discrimination, failure to prevent discrimination and intentional infliction of emotional distress.

## II. FACTS AND PROCEDURAL BACKGROUND

On February 22, 2011, plaintiff Anita Washington (hereinafter referred to as "Plaintiff") filed the third and final iteration of her first amended complaint against defendants California City Correction Center, CCA of Tennessee, LLC and Does 1 to 20, asserting causes of action for (1) discrimination, (2) wrongful termination in violation of public policy, (3) failure to prevent discrimination, (4) retaliation, (5) intentional infliction of emotional distress and (6) defamation.  The first through fifth causes of action were asserted against CCA of Tennessee, LLC; the sixth cause of action was asserted against all defendants.[1]  Within the first amended complaint, Plaintiff alleged as follows:

> "8.  John Guzman was the Chief of Security for Defendant and he was Plaintiff's immediate supervisor at all times mentioned herein.  John Guzman, Warden Gilkey and Warden Sugrue were the managing agents and officers for CCA at this facility.  In 2004 Guzman communicated his dislike for Plaintiff because of her race and told Plaintiff that she [sic] did not like black women.  Plaintiff is a black woman.  From 2004, Mr. Guzman was continuously abusive of Plaintiff.  Guzman would continuously harass plaintiff on a daily basis about her work performance and how the warden was upset with her.  Guzman would continuously tell Plaintiff that he was dissatisfied with Plaintiff's work performance.  Guzman told Plaintiff that she 'needed to improve being a sergeant over the officers in transport.'  Plaintiff then asked Guzman why Warden Gilkey was dissatisfied with Plaintiff's work performance and what Plaintiff did that caused Warden to be acting out toward her.  Guzman told Plaintiff that, 'He did not know,' but that Plaintiff better get it together or she would be demoted, move-out [sic] of transport or even fired."

Plaintiff further alleged:

> "Plaintiff then had a meeting with Warden Gilkey and talked with him on why he was upset with Plaintiff's work performance, as a sergeant.  Plaintiff then told the [sic] Warden Gilkey what Guzman had told her and how Guzman was constantly harassing her about how Warden Gilkey was upset with Plaintiff's work performance and how Warden Gilkey was watching Plaintiff.  Warden Gilkey replied and told Plaintiff that he was not upset with Plaintiff, that he had no problems with Plaintiff's work performance.  The warden then told Plaintiff that she 'was a good officer, to keep up the good work.'  And that if he had a problem, he would confront Plaintiff himself and would not send Guzman to do it."

Plaintiff further alleged:

> "9.  Even After [sic] this incident, Guzman continued his constant harassment of Plaintiff.  The harassment was constant.  Guzman would constantly tell Plaintiff that

---

[1] On February 28, 2011, Defendant filed a motion to dismiss the sixth cause of action for defamation pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court (Wanger, J.) granted Defendant's motion to dismiss on April 25, 2011 and directed Plaintiff to file a second amended complaint within ten days of the order.  No second amended complaint was ever filed.

if she could not do the job, 'get out,' find another job post.  Guzman would constantly tell Plaintiff how her co-workers were saying that Plaintiff 'was hard to work with,' that Plaintiff 'wasn't doing her job, putting things on them, that I should be doing or have done myself.'  Guzman would also constantly tell Plaintiff that her co-workers were saying that they were not going to work with Plaintiff, that Guzman needed to talk to Plaintiff or they are putting in for another post because of Plaintiff.  Plaintiff questioned the alleged co-workers and not one said that they had said that to Guzman.  The co-workers said, 'That is was [sic] Guzman, who did not want Plaintiff in transport and for Plaintiff to watch her back because Guzman was trying to get rid of Plaintiff."

Plaintiff further alleged:

"10. Guzman was also continuously telling Plaintiff that the medical staff was also complaining about working with Plaintiff.  Guzman would tell Plaintiff that she was hard to work with, accusing Plaintiff of making and setting up wrong dates and times, for medical appointments and releasing incomplete medical files of inmates, and not scheduling right appointments for medical ailments for the inmates.  Constant complaining from the medical staff about Plaintiff, said Guzman.  Plaintiff went to the medical supervisor Mrs. Ramos and medical staff, and asked Med/Super Ramos about the problems.  Ramos told Plaintiff that he [sic] had not received any complaints about Plaintiff and that there were no written incident statements from the staff or her complaining about Plaintiff.  Ramos confirmed that she had a good professional working relationship with her and her staff."

Plaintiff further alleged:

"11. In 2005/2006, Guzman told Plaintiff that the Transport Officers were complaining about working with Plaintiff on the airlift trips.  Guzman would continuously complain to Plaintiff that her co-workers on the airlifts told him that Plaintiff was not doing her job, not communicating, not giving information and not working as a team.  Guzman said, the officers were tired of Plaintiff acting like 'you're better than they are,' and how Plaintiff 'was not doing anything.'  That the co-worker wanted to switch Plaintiff out with a different Officer In Charge (OIC) for the airlifts.  Plaintiff went to her co-workers and confronted them with what Guzman had said.  The co-workers all said that, they did not have any complaints against Plaintiff on the airlifts, and that they did not go to Guzman and complain.  The co-workers all said, "If the warden or captain and records department was not complaining or writing me up,[ ] then Plaintiff should know that it was Guzman who was doing all the complaining."  The co-workers told Plaintiff that Guzman had told them that he did not Plaintiff [sic] in transport anymore.  Guzman became upset after he realized that Plaintiff spoke to the Transport Staff about his false allegations and removed Plaintiff from the airlift trips and put Plaintiff in charge of the medical runs, scheduling and paperwork, as a set up [sic] to terminate Plaintiff's employment."

Plaintiff further alleged:

"12. In October 2007, Plaintiff was demoted to Corrections Officer.  Plaintiff had complained to Mr. Guzman to stop his racial discriminatory practices and he refused to do so and instead continue [sic] his pattern of discriminatory practices against Plaintiff.  In or around September or October 2008, Plaintiff asked Mr. Guzman that she not be placed in transit because the high blood pressure medication she was

3

taking made her drowsy.  Plaintiff was placed in transit anyways and was demoted to the position of Correction Officer by Mr. Guzman because Plaintiff was allegedly drowsy in transit.  After Plaintiff complained about the discriminatory act of Guzman, she was subjected to retaliation in the form of false accusations of inappropriate relationship with an inmate and giving away equal or value [sic] to an inmate.  The allegation against Plaintiff was that an inmate stated that someone named Ana had a sexual relation with him.  Plaintiff's name is Anita not Ana, but Plaintiff was singled out for investigations and harassment.  Plaintiff was subsequently terminated on March 4, 2009, because of these false allegations motivated solely by racial discrimination and retaliation."

Plaintiff further alleged that on or about January 27, 2009, she filed a "Charge of Discrimination with the California Department of Fair Employment and Housing [DFEH] based upon retaliation," and that on or about January 29, 2009, DFEH "issued a Notice of Right-to Sue letter."  On March 20, 2012, CCA of Tennessee, LLC (hereinafter referred to as "Defendant") filed its motion for summary judgment or summary adjudication in the alternative pursuant to Federal Rule of Civil Procedure 56. Plaintiff filed her opposition to Defendant's motion for summary judgment or summary adjudication on April 3, 2012.  On April 16, 2012, Defendant filed its reply to Plaintiff's opposition.

## III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re*

*Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325).  If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538.  A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Even if the motion is unopposed, the movant is not absolved of the burden to show there are no genuine issues of material fact, *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993), although the court may assume the movant's assertions of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and other supporting materials show the movant is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2), (3).

## IV. DISCUSSION

***A. FEHA claims*** – Plaintiff's first through fourth causes of action assert claims of racial discrimination, wrongful termination in violation of public policy, failure to prevent discrimination and retaliation, respectively.  The first, third and fourth causes of action are statutory claims brought pursuant to the California Fair Employment and Housing Act (FEHA, Cal. Gov. Code, §§ 12900 et seq.); the second cause of action is a non-statutory claim arising out of FEHA.  Defendant now moves for summary adjudication of these claims, contending first that Plaintiff failed to exhaust her administrative remedies with respect to the statutory claims.  Defendant further contends the evidence fails to show Defendant terminated or discriminated in any way against Plaintiff because of Plaintiff's race or that it retaliated against Plaintiff by falsely accusing her of having an inappropriate relationship with an inmate after she complained about the alleged discrimination.

***1. Summary judgment principles applicable in the context of employment discrimination claims***

1  – FEHA provides in pertinent part: "It is an unlawful employment practice . . . [¶] (a) For an

2  employer, because of the race . . . of any person, to refuse to hire or employ the person or to refuse

3  to select the person for a training program leading to employment, or to bar or to discharge the

4  person from employment or from a training program leading to employment, or to discriminate

5  against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov.

6  Code, § 12940. " 'Race . . .' includes a perception that the person has . . . [that] characteristic[ ] or

7  . . . is associated with a person who has, or is perceived to have, . . . [that] characteristic[ ]." Cal.

8  Gov. Code, § 12926(n). "Because state and federal employment discrimination laws are similar,

9  California courts look to federal precedent when interpreting FEHA. *Guz v. Bechtel Nat'l, Inc.,* 24

10  Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000). In particular, California courts use the

11  familiar *McDonnell Douglas* burden-shifting test when analyzing disparate treatment claims under

12  FEHA. *Id.* (citing *McDonnell Douglas Corp. v. Green ,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

13  (1973))." *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1112 (9th Cir. 2011).

14       "Under the three-part *McDonnell Douglas* test, the plaintiff bears the initial burden of

15  establishing a prima facie case of employment discrimination." *Earl, supra,* 658 F.3d at 1112 (citing

16  *Noyes v. Kelly Services,* 488 F.3d 1163, 1168 (9th Cir. 2007)).[2] "Generally, the plaintiff must

17

18       [2] A plaintiff in a FEHA employment discrimination case may create genuine issues of
19  material fact by offering direct *or* circumstantial evidence of discrimination. *Guz, supra,* 24 Cal.4th
   at 354. "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus
20  without inference of presumption. Comments demonstrating discriminatory animus may be found
   to be direct evidence if there is evidence of a causal relationship between the comments and the
21  adverse job action at issue." *DeJung v. Superior Court,* 169 Cal.App.4th 533, 550, 87 Cal.Rptr.3d
   99 (2008); cf. *Patten v. Wal-Mart Stores East, Inc.,* 300 F.3d 21, 25 (1st Cir. 2002) (direct evidence
22  " 'consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely
   on the contested employment decision' "). If the plaintiff chooses to rely on direct evidence, the
23  three-part test of *McDonnell Douglas* does not apply. *DeJung, supra,* 169 Cal.App.4th at 550; cf.
24  *Guz, supra,* 24 Cal.4th at 354 (the "*McDonnell Douglas* test reflects the principle that direct
   evidence of intentional discrimination is rare, and that such claims must usually be proved
25  circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows
26  discrimination to be inferred from facts that create a reasonable likelihood of bias and are not
   satisfactorily explained"). Plaintiff has not pointed to any direct evidence of discrimination in the

27

28                                                    6

provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz ,supra,* 24 Cal.4th at 355. "While the plaintiff's prima facie burden is not onerous, he must at least show actions taken by the employer from which one can infer, if such actions remained unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion . . . ." *Id.* (internal citations and quotations omitted). Once the plaintiff has done so, "a presumption of discrimination arises." *Id.* The burden then "shifts to the employer to rebut the presumption by producing admissible evidence . . . that its action was taken for a legitimate, nondiscriminatory reason." *Id.* at 355-56. "If the employer sustains this burden, the presumption of discrimination disappears. The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Guz, supra,* 24 Cal.4th at 356 (internal citations omitted).

This order of proof applies, however, only when discrimination claims are *tried* before a court or a jury. *See Guz, supra,* 100 Cal.Rptr.2d at 352. On motion for summary judgment, the burdens are reversed: "A defendant seeking summary judgment must bear the initial burden of showing that the action has no merit, and the plaintiff will not be required to respond unless and until the defendant has borne that burden." *Martin v. Lockheed Missiles & Space Co.,* 29 Cal.App.4th 1718, 1730, 35 Cal.Rptr.2d 181 (1994) (internal citations and quotations omitted); *accord Department of Fair Employment and Housing v. Lucent Technologies,* 642 F.3d 728, 745 (9th Cir. 2011). "Thus, ' . . . , [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." ' *Lucent Technologies, supra,* 645 F.3d at 745 (citing *Avila v. Continental Airlines, Inc.,* 165 Cal.App.4th 1237, 82 Cal.Rptr.3d 440, 449 (2008)).

---

record. Therefore, the analysis in this case proceeds under the *McDonnell Douglas* framework.

1    "If the employer present admissible evidence that one or more of plaintiff's prima facie elements is

2    lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors,

3    the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence

4    which raises a triable issue of fact material to the defendant's showing." *Caldwell v. Paramount*

5    *Unified School Dist.,* 41 Cal.App.4th 189, 203, 48 Cal.Rptr.2d 448 (1995).   "The employee can

6    satisfy its burden by 'produc[ing] substantial responsive evidence that the employer's showing was

7    untrue or pretextual.' " *Lucent Technologies, supra,* 642 F.3d at 746 (citing *Hanson v. Lucky Stores,*

8    *Inc.,* 74 Cal.App.4th 215, 224, 87 Cal.Rptr.2d 487 (1999)).   With the foregoing principles in mind,

9    the Court now proceeds to address the threshold issue, raised by Defendant, of exhaustion of

10   administrative remedies, followed by the racial discrimination, failure to prevent discrimination,

11   retaliation and wrongful termination in violation of public policy causes of action in that order.

12

13   *2. Exhaustion of administrative remedies* – Defendant contends as an initial matter that summary

14   adjudication should be granted in its favor as to Plaintiff's three statutory FEHA causes of action (the

15   first, third and fourth causes of action for discrimination, failure to prevent discrimination and

16   retaliation, respectively) because Plaintiff failed to exhaust her administrative remedies with DFEH

17   prior to filing suit.   "Exhaustion of administrative remedies is a 'jurisdictional prerequisite to resort

18   to the courts.' " *Johnson v. City of Loma Linda,* 24 Cal.4th 61, 70, 99 Cal.Rptr.2d 316, 5 P.3d 874

19   (2000) (quoting *Abelleira v. District Court of Appeal,* 17 Cal.2d 280, 293, 109 P.2d 942 (1941))

20   (emphasis omitted).   "Before filing a civil action alleging FEHA violations, an employee must

21   exhaust his or her administrative remedies with DFEH.   Specifically, the employee must file an

22   administrative complaint with DFEH identifying the conduct alleged to violate FEHA.   At the

23   conclusion of the administrative process, DFEH generally issues the employee a right-to-sue notice."

24   *Wills v. Superior Court,* 195 Cal.App.4th 143, 153, 125 Cal.Rptr.3d 1 (2011); *see Okoli v. Lockheed*

25   *Technical Operations Co.,* 36 Cal.App.4th 1607, 1613, 43 Cal.Rptr.2d 57 (1995) ("If, following

26   receipt of a complaint, the DFEH fails to resolve the case or to file an accusation against the

27

28                                                                8

employer within 150 days, it must notify the employee in writing of his or her right to file a civil action under the FEHA" (citing Cal. Gov. Code, § 12965, subd. (b))). "The purpose of FEHA's administrative exhaustion requirement is to ensure DFEH is provided the opportunity to resolve disputes and eliminate unlawful employment practices through conciliation." *Wills, supra,* 195 Cal.App.4th at 156. "[I]n the absence of a timely administrative complaint, any civil action alleging a violation of FEHA will be subject to dismissal for failure to exhaust administrative remedies." *McCaskey v. California State Auto Assn.,* 189 Cal.App.4th 947, 976, 118 Cal.Rptr.3d 34 (2010).

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court first finds there are genuine issues of material fact as to whether Plaintiff exhausted her administrative remedies on the discrimination and failure to prevent discrimination claims.  Plaintiff's administrative complaint, filed with DFEH on January 26, 2009, alleged in pertinent part as follows: "I believe that on or about [¶] 05/27/08 to present [¶] respondent California City Correctional Center [¶] Has subjected me to wrongful investigation of inappropriate behavior [¶] because of my race [¶] African-American [¶] in violation of the California Fair Employment and Housing Act."  Notwithstanding the fact that Plaintiff filed her complaint on a preprinted DFEH form entitled "Complaint for Discrimination" and checked a box indicating race as the cause of the discrimination, such allegations are clearly sufficient to encompass claims of discrimination. *See Roby v. McKesson,* 47 Cal.App.4th 686, 706, 101 Cal.Rptr.3d 773, 219 P.3d 749 (2009) ("FEHA's discrimination provisions addresses . . . explicit changes in the 'terms, conditions, or privileges of employment' [citation]; that is, changes involving some official action taken by the employer. [Citation.] In the case of an institutional or corporate employer, the institution or corporation itself [may be alleged to] have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action" (emphases omitted)).  The evidence shows DFEH issued Plaintiff a right-to-sue letter on January 29, 2009, stating her case was closed pursuant to the recommendation of the consultant assigned to the complaint.  Thus, Defendant is not entitled to summary adjudication

of the discrimination-related claims on ground Plaintiff failed to exhaust her DFEH remedies.

The allegations in the administrative complaint were also sufficient to encompass claims of retaliation.  The Fourth District of the California Court of Appeal recently observed in *Wills, supra,* 195 Cal.App.4th 143: "[I]n *Nazir v. United Airlines, Inc.,* (2009) 178 Cal.App.4th 243, 100 Cal.Rptr.3d 296 (*Nazir*), the Court of Appeal discussed the permissible scope of a civil action for FEHA violations.  Specifically, the *Nazir* court adopted the following standard used to determine the permissible scope for civil actions under title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) after an employee files an administrative complaint with the federal Equal Employment Opportunity Commission: ' "The administrative exhaustion requirement is satisfied if the allegations of the civil action are within the scope of the EEOC charge, any EEOC investigation actually completed, or any investigation that might reasonably have been expected to grow out of the charge.  Thus, the judicial complaint may encompass any discrimination 'like and reasonably related to' the allegations of the EEOC charge." ' [Citations.]" *Id*. at 154-55.  *Will*s further observed: "The *Nazir* court . . . explained the importance, under this standard, of information obtained through an administrative investigation, rather than from merely examining the administrative complaint: ' " '[T]he "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. [¶] The logic of this rule is inherent in the statutory scheme of Title VII.  A charge of discrimination is *not* filed as a preliminary to a lawsuit.  On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC.  Once a charge has been filed, [the EEOC] carries out its investigatory function and attempts to obtain voluntary compliance with the law.  Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action.  Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation.' " [Citation].' [Citations.]" *Wills, supra,* 195 Cal.App.4th at 155.

In her administrative complaint, Plaintiff did not invoke the term "retaliation" or some

variation thereof, nor did she ever file a supplement to the complaint designating retaliation under FEHA (Cal. Gov. Code, § 12940, subd. (h)) as a distinct claim separate and apart from her claim of discrimination.  Nevertheless, Plaintiff alleged Defendant subjected her to a wrongful investigation of inappropriate behavior because of her race.  Plaintiff subsequently alleged in her civil complaint that Defendant retaliated against her by wrongfully investigating her behavior after she complained to Defendant about Guzman's racially motivated discrimination.  In the Court's view, a charge an employer has retaliated against an employee by wrongfully investigating her after she complains about racial discrimination is subsumed within, and thus "like and reasonably related" to, the more general claim the employer has subjected the employee to a wrongful investigation because of her race.  *Wills, supra,* 195 Cal.App.4th at 155 (internal citations and quotations omitted).  Complaining to one's employer about discriminatory misconduct by another employee is a protected activity under FEHA.  Cal. Gov. Code, § 12940, subd. (h); *see Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1047-48, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (2005).  Therefore, Plaintiff's administrative complaint could reasonably be read to include a claim of retaliation for engaging in protected activity.

In the Court's view, the retaliation alleged in Plaintiff's civil complaint would also have been encompassed within the scope of any administrative investigation "that might reasonably have been expected to grow out of" the discrimination charge had DFEH decided to investigate Plaintiff's claims before issuing her a right-to-sue letter.  *Wills, supra,* 195 Cal.App.4th at 155 (internal citations and quotations omitted).  Plaintiff, as noted above, filed her administrative complaint on January 26, 2009, alleging Defendant subjected her to a "wrongful investigation" from "05/27/08 to present" – that is, from May 27, 2008 to January 26, 2009.  According to the record, this "wrongful investigation" refers to a Department of Justice (DOJ) investigation initiated in 2008 based on accusations Plaintiff had an inappropriate relationship with an unidentified inmate at the correctional facility where she worked.  Those accusations also happen to be the adverse employment action identified as the basis for Plaintiff's retaliation claim.  Because the particular incident of retaliation identified the civil complaint – the accusations – had already occurred at the

11

1    time Plaintiff filed her administrative complaint, any investigation of the discrimination claim

2    asserted in the administrative complaint would more than likely have included an investigation of

3    the circumstances surrounding the DOJ's investigation, and therefore of Plaintiff's allegedly having

4    been retaliated against for complaining about discrimination.  *See Soldinger v. Northwest Airlines,*

5    *Inc.,* 51 Cal.App.4th 345, 381-83, 58 Cal.Rptr.2d 747 (1996); compare *Okoli, supra,* 36 Cal.App.4th

6    at 1613-17 (holding that retaliation allegedly occurring *after* the filing of a DFEH complaint would

7    not have been uncovered in an investigation of, and was therefore not like or reasonably related to,

8    charges made in the complaint).  For these reasons, the Court simply cannot conclude Plaintiff's

9    retaliation claim is barred under the doctrine of exhaustion of administrative remedies.

10          In its motion, Defendant contends the FEHA claims are barred because Plaintiff never alleged

11   a termination in her administrative complaint, even though the claims "stem primarily from her

12   allegedly unlawful termination."  Defendant further contends no termination could have been

13   uncovered in an administrative investigation given Plaintiff was not terminated until March 2009,

14   or approximately two months after she filed her administrative complaint.  If Plaintiff's claims were

15   premised exclusively on her termination (i.e., a termination was the only adverse employment action

16   alleged by Plaintiff), the Court would be inclined to agree with Defendant.  As Defendant correctly

17   observes, Plaintiff did not allege a termination in her administrative complaint, and the only evidence

18   in the record to suggest DFEH was ever informed of any misconduct related to Plaintiff's termination

19   is her declaration, attached as an exhibit to the opposition, wherein she testifies as follows: "I was

20   informed on January 13, 2009 that I have lost my job by the investigators from the [Department of

21   Justice].  I then contacted the department of fair employment and housing [sic] over the telephone

22   and reported the discrimination and harassment and that I was informed that I had been terminated.

23   The complaint was prepared by staff of the DFEH over the telephone and then transmitted to me for

24   my signature."  As the parties are no doubt aware, "oral statements made to DFEH before filing an

25   administrative complaint are not sufficient to exhaust administrative remedies."  *Wills, supra,* 195

26   Cal.App.4th at 158 (citing *Cole v. Antelope Valley Union High School Dist.,* 47 Cal.App.4th 1505,

27

28                                                        12

1515, 55 Cal.Rptr.2d 443 (1996)).   Problematically for Defendant, Plaintiff alleged adverse employment actions undertaken by Defendant other than her termination, including (1) a demotion from Senior Correctional Officer to Correctional Officer in 2007 and, as noted above, (2) accusations of inappropriate relationship with an inmate resulting in the DOJ investigation.   The accusations and DOJ investigation, again, were alluded to in the administrative complaint.   The evidence shows the demotion, while not mentioned in the administrative complaint, predated the DOJ investigation and would likely have been uncovered by a DFEH investigation.   Thus, Defendant is not entitled to summary adjudication of the FEHA causes of action for failure to exhaust administrative remedies.

*3. Discrimination cause of action* – The Court now turns to the causes of action, beginning with discrimination.   As a threshold matter, Defendant attempts to meet its initial burden on summary judgment by arguing Plaintiff cannot establish all four elements of a prima facie case of discrimination based on race.   As noted above, to establish a prima facie case of discrimination, "the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."   *Guz ,supra,* 24 Cal.4th at 355.

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court first finds Defendant has met its initial burden.   Defendant refers to Plaintiff's deposition testimony and various documentary exhibits as support for its contention Plaintiff was not performing competently in her position.   At her deposition, Plaintiff testified she had received a disciplinary notice from her supervisors sometime in 2005 for unprofessional conduct in dealing with an inmate.   Plaintiff explained the way she had handled herself – "[getting] into a situation with an inmate on a transport, which led to an argument" – was deemed to be unprofessional, resulting in several days' suspension without pay.   This incident was documented in a "CCA Employee Problem Solving Notice" dated September 7, 2005, stating Plaintiff had been involved in an

altercation with an inmate at High Desert Medical Group and had admitted to arguing with him and stepping on his leg restraints.  The notice further found Plaintiff had violated Defendant's Code of Conduct (CCA Policy 3-3) and recommended she be suspended for five days and demoted to Correctional Officer.  At her deposition, Plaintiff further testified she received a "CCA Facility Employee Problem Solving Notice" from her supervisors dated September 17, 2007.  The record shows the notice was issued to Plaintiff for a situation occurring on March 23, 2007, during which Plaintiff was found to have been asleep and inattentive on duty while escorting an inmate to dialysis treatment.  The notice further recommended Plaintiff be suspended and demoted.  In the Court's view, the foregoing evidence is sufficient to demonstrate at least one of the elements of Plaintiff's prima facie case – that she was performing competently in the position she held – is lacking.

The Court further finds Defendant has met its burden by showing Plaintiff's demotion was based on legitimate, nondiscriminatory factors.  *See Guz, supra,* 24 Cal.4th at 357.  "To demonstrate a legitimate, nondiscriminatory reason for its decision to [demote][the employee], [the employer] 'must show that the procedure by which [the employee] was [demoted] was validly and fairly devised and administered to serve a legitimate business purpose.' "  *Lucent Technologies, supra,* 642 F.3d at 745-46.  "A reason is ' "legitimate" ' if it is 'facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination."  *Reid v. Google, Inc.,* 50 Cal.4th 512, 520 n. 2, 113 Cal.Rptr.3d 327, 235 P.3d 988 (2010) (citing *Guz, supra,* 24 Cal.4th at 358) (emphasis omitted).  The September 17, 2007 notice found Plaintiff had "self-admitted to falling asleep on escorted trips (inattention to duty)" in violation of Defendant's Code of Conduct (CCA Policy 3-3) and, as noted above, recommended Plaintiff be suspended and demoted.  Pursuant to the notice and corresponding investigation, Plaintiff was demoted from Senior Correctional Officer to Correctional Officer effective September 30, 2007.  Poor job performance, as here, is a legitimate, nondiscriminatory reason for demoting an employee.  *See Aragon v. Republic Silver State Disposal Inc.,* 292 F.3d 654, 660-61 (9th Cir. 2002).  Thus, the burden shifts to Plaintiff to offer evidence of discriminatory motive or show the reason for demotion was merely a pretext for discrimination.

"A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl, supra,* 658 F.3d at 1112-13 (citing *Chuang v. University of California Davis, Bd. of Trustees,* 225 F.3d 1115, 1127 (9th Cir. 2000)). "When evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Earl, supra,* 658 F.3d at 1113 (citing *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1222 (9th Cir. 1998)). " 'An employee in this situation can not simply show the employer's decision was wrong, mistaken or unwise.' 'Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for the . . . non-discriminatory reasons.' " *Lucent Technologies, supra,* 642 F.3d at 746 (citing *Morgan v. Regents of the Univ. of Cal.,* 88 Cal.App.4th 52, 105 Cal.Rptr.2d 652, 670 (2000)). Having reviewed the pleadings of record and all competent and admissible evidence, the Court finds Plaintiff has met her burden to show discriminatory motive by offering evidence her demotion was driven by animus.

In a declaration submitted with the opposition, Plaintiff testifies: "In 2004, Guzman communicated his dislike for me and told me that he did not like black women.  I am a black woman. From 2004, Guzman was continuously abusive towards me.  Guzman would continuously harass me on a daily basis about my work performance and how the warden was upset with me.  Guzman would continuously tell me that he was dissatisfied with my work performance."  Plaintiff further testifies: "Guzman would constantly tell me that if I could not do the job, 'get out,' find another job post."  Plaintiff further testifies: "In October 2007, I was demoted to Corrections Officer.  I had complained to Mr. Guzman to stop his racial discriminatory practices and he refused to do so and instead continue [sic] his pattern of discriminatory practices against me.  In or around September or October 2008, I asked Mr. Guzman not to place me in transit because the high blood pressure

1    medication I was taking made me drowsy.  He placed me in transit anyways and I was demoted to

2    the position of Correction [sic] Officer by Mr. Guzman[.]"  Guzman's derogatory comment about

3    black women, coupled with his treatment of Plaintiff over the course of her employment with

4    Defendant, would be sufficient for a reasonable trier of fact to infer Guzman's racial animus toward

5    Plaintiff was the motivating factor behind the decision to place Plaintiff in transit and, eventually,

6    to demote Plaintiff.  *See E.E.O.C. v. Boeing Co.,* 577 F.3d 1044, 1049-51 (9th Cir. 2009).  Although

7    the credibility and significance of Plaintiff's testimony is ultimately for the trier of fact to resolve,

8    the testimony itself is undoubtedly sufficient to send the discrimination cause of action to trial.

9    Accordingly, summary adjudication of the discrimination cause of action must be denied.

10

11   ***4. Failure to prevent discrimination cause of action*** – Defendant further moves for summary

12   adjudication of Plaintiff's cause of action for failure to prevent discrimination, contending that where

13   there has been no discrimination, there can be no claim for failure to prevent it.  Under FEHA, it is

14   an unlawful employment practice "[f]or an employer . . . to fail to take all reasonable steps to prevent

15   discrimination . . . from occurring."  Cal. Gov. Code, § 12940, subd. (k).  "One such reasonable step,

16   and one that is required in order to ensure a discrimination-free work environment, is a prompt

17   investigation of [a] discrimination claim."  *California Fair Employment and Housing Commission*

18   *v. Gemini Aluminum Corporation,* 122 Cal.App.4th 1004, 1024, 18 Cal.Rptr.3d 906 (2004) (citing

19   *Northrop Grumman Corp v. Workers' Comp. Appeals Bd.,* 103 Cal.App.4th 1021, 1035, 127

20   Cal.Rptr.2d 285 (2002)).  "Other reasonable steps an employer might take include the establishment

21   and promulgation of antidiscrimination policies and the implementation of effective procedures to

22   handle complaints and grievances regarding discrimination."  *Id*. at 1025.  Because Plaintiff has met

23   her burden to show genuine issues of material fact as to actionable discrimination,  Defendant may

24   be held liable for failing to prevent discrimination.  Thus, to meet its burden on summary judgment,

25   Defendant must submit evidence to show it took one or more of the foregoing steps to investigate

26   or prevent discrimination from occurring.   That was not done here.   Accordingly, summary

27

28                                                            16

adjudication of the cause of action for failure to prevent discrimination must be denied.

**5. Retaliation cause of action** – Defendant further moves for summary adjudication of the retaliation cause of action. "The elements of a claim for retaliation in violation of section 12940, subdivision (h), are . . . (1) the employee's engagement in a protected activity, i.e., 'oppos[ing] any practices forbidden under this part'; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation." *Mamou v. Trendwest Resorts, Inc.,* 165 Cal.App.4th 686, 713, 81 Cal.Rptr.3d 406 (2008). "Proof of two of these elements – the second and fourth is likely to depend on circumstantial evidence, since they consist of subjective matters only the employer can directly know, i.e., his attitude toward the plaintiff and his reasons for taking a particular adverse action." *Id*. Accordingly, as with the discrimination cause of action, analysis of the retaliation cause of action proceeds under the *McDonnell Douglas* burden-shifting framework. *See id.* at 713-15; *see also Joaquin v. City of Los Angeles,* 202 Cal.App.4th 1207, 1219-22, 136 Cal.Rptr.3d 472 (2012).

To meet its initial burden, Defendant first contends the evidence fails to show Plaintiff engaged in any protected activity under FEHA. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court disagrees. "An employee's formal or informal complaints to a supervisor regarding unlawful discrimination is a 'protected activity' and adverse actions taken against the employee after such complaints may constitute retaliation." *Mendoza v. Los Angeles Dept. of Water and Power,* 2009 WL 3358670 (Cal.App. 2 Dist. 2009) (unpublished), at *11 (citing *Passantino v. Johnson & Johnson Consumer Prod., Inc.,* 212 F.3d 493, 506 (9th Cir. 2000));[3] *accord Gemini Aluminum, supra,* 122 Cal.App.4th at 1018 ("Informal complaints to management about discriminatory employment practices are considered sufficient opposition to trigger the prohibition against retaliation"). At her deposition, Plaintiff was asked,

_____

[3] The Court may cite unpublished California appellate decisions as persuasive authority. *See Employers Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

17

"Did you ever lodge a verbal complaint about Mr. Guzman's *discriminatory behavior*?" (Emphasis added.) Plaintiff testified, "Yes." Plaintiff explained the complaint was made in 2007 to Lieutenant Carpenter, her supervisor.  Plaintiff testifies again in her declaration that she complained to Carpenter about the discrimination she was experiencing from Guzman.  Such actions arguably constitute engagement in protected activity. *See Gemini Aluminum, supra,* at p. 1018.

Defendant further suggests there are no genuine issues of material fact as to adverse employment actions.  Not so.  "[I]n order to establish either a discrimination or a retaliation claim, 'an employee must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment[.]' " *Jones v. Lodge at Torrey Pines Partnership,* 42 Cal.4th 1158, 1168, 72 Cal.Rptr.3d 624, 177 P.3d 232 (2008) (quoting *Yanowitz, supra,* 36 Cal.4th at 1051).  "[A]n adverse employment action is not limited to 'ultimate' employment acts, such as hiring, firing, demotion or failure to promote, but also includes the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for career enhancement." *Jones v. Department of Corrections and Rehabilitation,* 152 Cal.App.4th 1367, 1380, 62 Cal.Rptr.3d 200 (2007) (citing *Yanowitz, supra,* 36 Cal.4th at 1053-54).  In her declaration, Plaintiff testifies, "After I complained about the discriminatory act of Guzman, I was subjected to . . . false accusations of inappropriate relationship with an inmate and giving away equal or value [sic] to an inmate."  The evidence shows these allegations were the impetus behind the DOJ investigation, which concluded Plaintiff had had an inappropriate relationship with and given something of value to an inmate and recommended Defendant take disciplinary or adverse action against Plaintiff.   The evidence further shows Defendant terminated Plaintiff because of the DOJ's findings.  Regardless of whether the allegations were true or false, they clearly had adverse consequences for Plaintiff's employment.

Nevertheless, the Court further finds that, even assuming Plaintiff engaged in protected activity and suffered an adverse employment action, there are no genuine issues of material fact as to causality.  "To show the requisite causal link, the plaintiff must present evidence sufficient to raise

the inference that her protected activity was the likely reason for the adverse action. [Citations.] Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity. [Citations.]" *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir. 1982); *see Avila v. Continental Airlines, Inc.,* 165 Cal.App.4th 1237, 1250-51, 82 Cal.Rptr.3d 440 (2008); *Morgan v. Regents of University of Cal.,* 88 Cal.App.4th 52, 70-73, 105 Cal.Rptr.2d 652 (2000). Here, the evidence shows the only person to whom Plaintiff complained about Guzman's discriminatory conduct was Carpenter.  There is no evidence to suggest Carpenter was a managerial employee or someone involved in making the accusations against Plaintiff, let alone initiating the DOJ investigation.  Nor is there evidence to suggest Carpenter ever communicated Plaintiff's complaint to management or another employee who might have been in a position to accuse Plaintiff or set the investigation in motion.  Under these circumstances, no reasonable trier of fact could conclude Defendant was aware Plaintiff had engaged in protected activity.  Carpenter's knowledge of Plaintiff's complaint is not imputed to Defendant simply because he was Plaintiff's supervisor.  *See Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928, 931-33 (7th Cir. 1995).

Even assuming Defendant knew of Plaintiff's complaint, there is no evidence, other than the temporal proximity between the complaint and the accusations, to suggest Defendant took action against Plaintiff *because* she complained.  Plaintiff essentially concedes this in her opposition, but contends temporal proximity, by itself, is nonetheless sufficient to warrant an inference of retaliation. The Court disagrees.  "The cases that accept mere temporary proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal proximity must be 'very close,' *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248 (C.A.10 2001).  See, *e.g., Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (C.A.10 1997) (3-month period insufficient ); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (C.A.7 1992) (4-month period insufficient)." *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).  Plaintiff testified variously at her deposition that she complained to Carpenter sometime in the "early part of

1  2007" or "early 2007."  The DOJ's report shows the accusations against Plaintiff could not have

2  been made any earlier than January 2008, and were most likely made sometime after May 2008.

3  Even engaging in inferences most favorable to Plaintiff, no fewer than six months elapsed between

4  the making of the complaint and the accusations.  This tends to suggest causality was absent.

5  Accordingly, summary adjudication of the retaliation claim shall be granted in favor of Defendant.

6

7  *6. Wrongful termination cause of action* – Defendant further contends summary adjudication

8  should be granted as to Plaintiff's cause of action for wrongful termination in violation of the public

9  policy embodied by FEHA's anti-discrimination/retaliation provisions.  "[W]hen an employer's

10  discharge of an employee violates fundamental principles of public policy, the discharged employee

11  may maintain a tort action and recover damages traditionally available in such actions." *Tameny v.*

12  *Atlantic Richfield Co.,* 27 Cal.3d 167, 170, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980).  To establish

13  a claim for wrongful termination in violation of public policy, a plaintiff must show (1) an employer-

14  employee relationship, (2) the defendant subjected the plaintiff to an adverse employment action,

15  (3) the adverse employment action violated public policy and (4) caused the plaintiff harm.  *Haney*

16  *v. Aramark Uniform Services, Inc.,* 121 Cal.App.4th 623, 641, 17 Cal.Rptr.3d 336 (2004).  Plaintiff

17  alleges she was terminated "as a direct result of, and in retaliation for, her discrimination complaints

18  against Guzman."  As with the discrimination and retaliation causes of action, analysis of the

19  wrongful termination cause of action proceeds under the *McDonnell Douglas* framework.  *Loggins*

20  *v. Kaiser Permanente Intern.,* 151 Cal.App.4th 1102, 1108-1109, 60 Cal.Rptr.3d 45 (2007).

21      Having reviewed the pleadings of record and all competent and admissible evidence

22  submitted, the Court first finds Defendant has met its initial burden by offering a legitimate,

23  nondiscriminatory reason for its decision to terminate Plaintiff's employment.  Defendant submits

24  the declaration of Alfred Zavala, who testifies as follows:

25      "1. I am currently employed by CCA of Tennessee, LLC ('CCA') as an Investigator
       at the Nevada Southern Detention Center.  I worked at CCA's California City facility

26     as a Special Investigative Agent from January 2007 through June 2010 . . . . [¶] 2. In
       2008, the federal Department of Justice ('DOJ') conducted an independent

27

28                                      20

investigation into allegations involving Correctional Officer, Anita Washington, who worked at CCA's California City facility.  The investigation stemmed from regular monitoring of prerecorded inmate telephone conversations of an inmate Rabago stating that someone on the inside has been helping him out."

Zavala further testifies:

"3. In connection with the investigation I assisted the DOJ with coordinating meetings with witnesses and transmitting relevant documents to the DOJ.  However, I made no attempts, nor did anyone at CCA of which I am aware, to influence the investigation or bias the conclusions of the DOJ. [¶] 4. Following the investigation, David Loftus of the DOJ, provided a Report of Investigation to CCA."

Defendant also submits the declaration of John Sugrue, who testifies as follows:

"1. I was formerly the Warden at CCA of Tennessee, LLC's California City facility and held that position in March 2009 . . . . [¶] 2. CCA provides privately-managed corrections solutions to federal, state and local government.  CCA operates the California City Correctional Center pursuant to a federal contract. [¶] . . . [¶] 4. In or about March 24, 2009, the DOJ provided me with a Report of Investigation that sustained the allegations against Washington of inappropriate relationship with an inmate/giving anything of value to an inmate.  I believed in good faith that the conclusions reached in the Report of Investigation were true."

Sugrue further testifies:

"5. The DOJ's findings confirming inappropriate relationship with an inmate and giving anything of value to an inmate against Washington were also sustained on or around March 24, 2009 by the Office of Internal Affairs, Federal Bureau of Prisons. [¶] 6. Based upon the Report of Investigation, and conclusions from the Department of Justice contained therein, I terminated Washington's employment with CCA. [¶] 7. John Guzman was not consulted nor did he participate in the decision to terminate Plaintiff. [¶] 8. Washington's race and gender played no role in my decision to terminate her employment with CCA."

Defendant also submits the declaration of Ronald Thompson, who testifies as follows:

"1. I was the Managing Director, Facility Operations, at CCA of Tennessee, LLC's California City facility and held that position in March and April of 2009 . . . . [¶] 3. On or about March 27, 2009, Plaintiff filed a grievance in connection with her termination on or about March 24, 2009. [¶] 4. I was responsible for looking into and handling the grievance related to her termination.  During the course of my investigation I learned that the federal Department of Justice ('DOJ') had conducted an independent investigation into allegations involving Correctional Officer, Anita Washington, who worked at CCA's California City facility."

Thompson further testifies:

"5. During the investigation, I reviewed the DOJ Report of Investigation, and the underlying evidence, that sustained the allegations against Washington of inappropriate relationship with an inmate/giving anything of value to an inmate.  I believed in good faith that the conclusions reached in the Report of Investigation was

21

1
2
3
4

> [sic] true. [¶] 6.  The DOJ's findings confirming inappropriate relationship with an inmate and giving anything of value to an inmate against Washington were also sustained on or around March 24, 2009 by the Office of Internal Affairs, Federal Bureau of Prisons.  [¶] 7.  Based upon my review of the Report of Investigation, and my belief in the conclusions contained therein, I upheld the Warden Surge's [sic] decision to terminate Plaintiff's employment with CCA. [¶] 8.  Washington's race and gender played no role in my decision to uphold the termination decision."

5   "When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is

6   the accusation true?"  *E.E.O.C. v. Total System Services, Inc.,* 221 F.3d 1171, 1176 (11th Cir. 2000).

7   The evidence show the government conducted a thorough, independent investigation and found the

8   accusations against Plaintiff to be meritorious.  The evidence further shows Defendant terminated

9   Plaintiff because of the findings contained in the investigative report.  Together, this establishes

10  Plaintiff's termination was the result of Defendant's reasonable belief Plaintiff had had an

11  inappropriate relationship with an inmate and given something of value to an inmate.  Whether

12  Plaintiff did these things is irrelevant so long as Defendant reasonably believed she did.  *See King*

13  *v. United Parcel Service, Inc.,* 152 Cal.App.4th 426, 433, 60 Cal.Rptr.3d 359 (2007) (citing

14  *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1053, 1063 (9th Cir. 2002)) ("For purposes of

15  establishing the moving employer's initial burden of proof, it does not matter whether plaintiff

16  actually did commit a[ ] . . . violation as long as [the employer] honestly believed he did").  Thus,

17  because Defendant has established a legitimate, nondiscriminatory reason for terminating Plaintiff's

18  employment, the burden shifts to Plaintiff to show the proffered reason was merely pretext.

19      Plaintiff attempts to establish pretext indirectly by pointing to her declaration, wherein she

20  testifies: "The allegation against me was that an inmate stated that someone named 'Ana' had a

21  sexual relation with him. [¶] 13.  My name is Anita and not 'Ana.'  I was not the only African

22  American employee working for CCA at that time and there was another employee named Ana

23  Anderson also employed by CCA. [¶] 14. Despite this fact, I was singled out for investigations and

24  harassment.  No other employee was suspected by CCA to be the one aiding the inmate and or [sic]

25  investigated for the allegations made."  From this, Plaintiff contends Defendant's explanation is

26  inherently unbelievable.  The Court does not agree.  Contrary to Plaintiff's implication, the DOJ

27

28                                                     22

investigation was not based solely on the allegation that someone named Ana had had a sexual relationship with an inmate.  The evidence shows the investigation was initiated based on an allegation that Plaintiff had allowed an inmate to have additional meals without scanning his inmate identification card.  The evidence further shows that during recorded telephone calls, the inmate in question had stated a black female known as "Ana" was going to put money in his inmate account, buy him clothes for his release from custody and visit him in Mexico upon his release.  According to the DOJ's report, Defendant suspected Plaintiff because she was an African-American female and the only officer with a similar name working in the area where the inmate was housed.  Another correctional officer also received information from an inmate source that Plaintiff had been seen kissing the inmate in his cell.  In light of these circumstances, the statements asserted in Plaintiff's declaration do not undermine the credibility of Defendant's proffered reason for the termination. Defendant, in any case, did not terminate Plaintiff because of the accusations; Defendant terminated Plaintiff because of the findings made pursuant to the DOJ's investigation.  Whether the accusations themselves were credible is essentially irrelevant as it pertains to Plaintiff's termination.

Plaintiff further suggests that the temporal proximity between her complaint and termination is itself sufficient to create a genuine issue of material fact as to pretext.  Problematically for Plaintiff, "[w]here the employee relies solely on temporal proximity in response to the employer's evidence of a nonretaliatory reason for termination, he or she does not create a triable issue as to pretext[.]" *Arteaga v. Brink's, Inc.,* 163 Cal.App.4th 327, 357, 77 Cal.Rptr.3d 654 (2008).  The evidence also shows Plaintiff was terminated in March 2009, or approximately two years after she complained to Carpenter about Guzman's discrimination in early 2007.  Two years far exceeds the proximity needed to establish the causation element of a wrongful termination claim.  Accordingly, summary adjudication of the wrongful termination claim shall be granted in favor of Defendant.

*C. Emotional distress claim* – Lastly, Defendant moves for summary adjudication of the fifth cause of action for intentional infliction of emotional distress, contending there are no genuine issues of material fact as to extreme and outrageous conduct.  "The elements of a cause of action for

23

intentional infliction of emotional distress are: ' "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." ' " *Wong v. Tai Jing,* 189 Cal.App.4th 1354, 1376, 117 Cal.Rptr.3d 747 (2010) (citations omitted).  "Given an employee's fundamental, civil right to a discrimination free work environment [citations], by its very nature, [discrimination] in the work place is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society. [¶] Accordingly, if properly pled, [discrimination] will constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress[.]" *Fisher v. San Pedro Peninsula Hospital,* 214 Cal.App.3d 590, 618, 262 Cal.Rptr. 842 (1989).  Because Plaintiff has met her burden to show genuine issues of material fact as to discrimination, the emotional distress claim survives summary judgment.  Because punitive damages are recoverable for intentional infliction of emotional distress, Defendant is also not entitled to summary adjudication of the prayer for punitive damages.  *See Lackner v. North,* 135 Cal.App.4th 1188, 1212, 37 Cal.Rptr.3d 863 (2006) ("Because punitive damages are imposed 'for the sake of example and by way of punishing the defendant' ([Cal. Civ. Code,] § 3294, subd. (a)), they are typically awarded for intentional torts such as . . . intentional infliction of emotional distress").

**V. DISPOSITION**

Based on the foregoing, the motion of defendant CCA of Tennessee, LLC for summary judgment is DENIED.  Summary adjudication in favor of defendant CCA of Tennessee, LLC is GRANTED as to the second and fourth causes of action for wrongful termination in violation of public policy and retaliation, respectively.  Summary adjudication is DENIED as to the first, third and fifth causes of action for discrimination, failure to prevent discrimination and intentional infliction of emotional distress, respectively, and as to the prayer for punitive damages.

IT IS SO ORDERED.

Dated:   May 9, 2012                              _____

CHIEF UNITED STATES DISTRICT JUDGE

25