**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANITA WASHINGTON,<br><br>        Plaintiff,<br><br>    v.<br><br>CALIFORNIA CITY CORRECTION CENTER; CCA OF TENNESSEE, LLC; and DOES 1 to 20,<br><br>        Defendants. | 1:10-cv-02031-AWI-JLT<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION**<br><br>(Doc. 60) |

## I. INTRODUCTION

Defendant CCA of Tennessee, LLC (erroneously sued as California City Correction Center) has filed a second motion for summary judgment or summary adjudication in the alternative. For reasons discussed below, summary adjudication of the causes of action for discrimination and failure to prevent discrimination shall be granted in favor of Defendant; summary adjudication of the cause of action for intentional infliction of emotional distress shall be denied.

## II. FACTS AND PROCEDURAL BACKGROUND

The Court refers the parties to the orders issued April 25, 2011, May 10, 2012 and May 25, 2012 for

a partial chronology of the proceedings and a discussion of the law applicable to employment discrimination cases. On February 22, 2011, plaintiff Anita Washington (hereinafter "Plaintiff") filed the third and final iteration of her first amended complaint against defendants California City Correction Center, CCA of Tennessee, LLC and Does 1 to 20, asserting causes of action for (1) discrimination, (2) wrongful termination in violation of public policy, (3) failure to prevent discrimination, (4) retaliation, (5) intentional infliction of emotional distress and (6) defamation. The first through fifth causes of action were asserted solely against defendant CCA of Tennessee, LLC (hereinafter "Defendant"); the sixth cause of action was asserted against all defendants.

On February 28, 2011, Defendant filed a motion to dismiss the sixth cause of action for defamation pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court (Wanger, J.) granted Defendant's motion to dismiss the sixth cause of action with leave to amend on April 25, 2011 and directed Plaintiff to file a second amended complaint within ten days of entry of the order. *Washington v. California City Correction Center,* slip copy, 2011 WL 1566742 (E.D.Cal. April 25, 2011) (*Washington I*), at *5-*6. No second amended complaint was ever filed by Plaintiff.

On March 30, 2012, Defendant filed a motion for summary judgment or summary adjudication in the alternative pursuant to Federal Rule of Civil Procedure 56. In an order issued May 9, 2012, the Court granted summary adjudication in favor of Defendant as to the second and fourth causes of action for wrongful termination in violation of public policy and retaliation, but denied summary adjudication as to the first, third and fifth causes of action for discrimination, failure to prevent discrimination and intentional infliction of emotional distress. *Washington v. California City Correction Center,* slip copy, 2012 WL 1657579 (E.D.Cal. May 10, 2012) (*Washington II*).

On May 21, 2012, Defendant filed an ex parte application for order reopening time to file a motion for judgment on the pleadings and/or motion to dismiss, contending such motions were necessary and appropriate because the remaining claims were outside the Court's subject matter jurisdiction. In particular, Defendant contended the discrimination-related causes of action were barred under the one-year statute of limitations for exhaustion of administrative remedies under the

2

California Fair Employment and Housing Act (FEHA, Cal. Gov. Code, §§ 12900 et seq.). Defendant further contended the cause of action for intentional infliction of emotional distress was barred by the exclusive remedies available under California's Workers' Compensation Act (WCA, Cal. Lab. Code, §§ 3200 et seq.). Neither issue was raised in Defendant's motion for summary judgment.

On May 22, 2012, the Court reviewed Defendant's ex parte application and found it raised significant issues. Accordingly, the Court directed Plaintiff to file a response.

On May 24, 2012, Plaintiff filed her response to Defendant's ex parte application, contending there were actionable adverse employment actions occurring within FEHA's one-year statute of limitations. Plaintiff further contended emotional distress injuries resulting from unlawful discrimination are exempted from the WCA's exclusivity provisions.

On May 25, 2012, the Court granted Defendant's ex parte application conditionally for the limited purpose of conducting a second round of summary judgment proceedings only as to issues of FEHA statute of limitations and workers' compensation exclusivity. *Washington v. California City Correction Center,* slip copy, 2012 WL 1910099 (E.D.Cal. May 25, 2012) (*Washington III*). On June 11, 2012, Defendant filed its second motion for summary judgment or summary adjudication in the alternative. Plaintiff filed his opposition to Defendant's motion on June 25, 2012.

### III. DISCUSSION

**A. *FEHA statute of limitations* –** As a threshold matter, Defendant contends Plaintiff's causes of action for discrimination and failure to prevent discrimination are barred as a matter of law because Plaintiff did not file an administrative complaint within one year of her September 2007 demotion from Senior Correctional Officer to Correctional Officer, the adverse employment action underpinning the foregoing causes of action. In its May 25, 2012 order directing the parties to brief a second round of summary judgment proceedings, the Court explained as follows:

> "FEHA provides that subject to certain statutory exceptions, 'No [administrative] complaint may be filed after the expiration of one year from the date upon which the

3

> alleged unlawful practice or refusal to cooperate occurred[.]' Cal. Gov. Code, § 12960, subd. (d). '[A]ny conduct occurring [outside this time frame] cannot serve as the basis for liability [under FEHA] unless some exception to the one-year limitations period applies.' *Cucuzza v. City of Santa Clara,* 104 Cal.App.4th 1031, 1040, 128 Cal.Rptr.2d 660 (2002). In this case, Plaintiff filed her administrative complaint on January 26, 2009. The only adverse employment actions occurring within one year of the complaint were the allegedly false accusations made against Plaintiff and Plaintiff's termination; Plaintiff's demotion predated the complaint by more than one year. Thus, Plaintiff may not rely on the demotion as a basis for the discrimination or failure to prevent discrimination claims unless an exception to the one-year limitations period applies."

*Washington III, supra,* 2012 WL 1910099 at *2. The Court further explained:

> "Section 12960, subdivision (d) 'identifies four exceptions: (1) a 90-day extension in instances of delayed discovery of the unlawful practice; (2) a one-year extension in certain instances of delayed discovery of the identity of the actual employer; (3) a one-to-three-year extension for Ralph Hate Crimes Act ([Cal.] Civ. Code, § 51.7) violations in cases of delayed discovery of the perpetrator's identity; and (4) an extension of one year after an aggrieved party achieves the age of majority if the misconduct occurred while the party was a minor[.]' *McDonald v. Antelope Valley Community College Dist.,* 45 Cal.4th 88, 106-107, 84 Cal.Rptr.3d 734, 194 P.3d 1026 (2008) (citing Cal. Civ. Code., § 12960, subd. (d)(1)-(4)). The record, however, contains no evidence to support the application of any of these exceptions."

*Id*. The Court further explained:

> "In *McDonald, supra,* the California Supreme Court held that, aside from the foregoing exceptions, the one-year statute of limitations could be equitably tolled where the employee voluntarily pursues an internal administrative grievance procedure. 44 Cal.4th at 108-114. Problematically for Plaintiff, there is no evidence to suggest Plaintiff ever pursued an internal grievance procedure. The only internal 'procedure' Plaintiff arguably took was to complain to another supervisor about her immediate supervisor's discriminatory conduct. Plaintiff has provided no authority – and the Court's research reveals no authority – to suggest this action could conceivably support equitable tolling. Accordingly, Plaintiff is barred from pursuing recovery for acts of discrimination occurring more than one year before January 26, 2009. Thus, to the extent the discrimination and failure to prevent discrimination claims are premised on the September 2007 demotion (and any misconduct predating the demotion), the claims should be dismissed."

*Id*. In her response to Defendant's May 21, 2012 ex parte application, Plaintiff provided no argument or evidence to explain how her September 2007 demotion could conceivably serve as the basis for liability under FEHA's anti-discrimination provisions even though her administrative

4

complaint was filed more than one year after the demotion occurred.[1]  Instead, Plaintiff contended there was a separate, independently actionable adverse employment action aside from the September 2007 demotion that occurred *within* the FEHA one-year statute of limitations.  In support of this contention, Plaintiff pointed to her declaration, submitted in opposition to Defendant's original motion for summary judgment or summary adjudication, wherein Plaintiff testified as follows:

> "In or around September or October 2008, I asked Mr. Guzman not to place me in transit because the high blood pressure medication I was taking made me drowsy. He placed me in transit anyways and I was demoted to the position of Correction Officer by Mr. Guzman because I was allegedly drowsy in transit."

From this, Plaintiff contended there was sufficient evidence to show Plaintiff suffered an adverse employment action sometime in Fall 2008 – only several months before she filed her administrative complaint in January 2009 – that could conceivably form the basis for the discrimination and failure to prevent discrimination causes of action.  The Court expressed its skepticism of Plaintiff's theory:

> "[T]he evidence in the record shows Plaintiff had already been placed in transit as early as 2005, and was still working in transit as late as 2007.  At the very least, the Court would like an explanation as to how, absent evidence of an intervening transfer (which was not provided here), Plaintiff could have been 're-placed' into transit by Guzman in 2008.  The evidence in the record further shows Plaintiff had already been demoted from Senior Correctional Officer to Correctional Officer in September 2007.  The Court would like an explanation as to how, absent evidence of an intervening promotion (which was also not provided), Plaintiff could have been 're-demoted' to Correctional Officer by Guzman in 2008."

*Washington III, supra,* 2012 WL 1910099 at *3.  In a declaration submitted with the opposition to Defendant's second motion for summary judgment or summary adjudication, Plaintiff's counsel Donald Iwuchuku now concedes the Fall 2008 date was erroneous: "I interviewed Plaintiff . . . to clarify the facts regarding the timing of her placement in transport in 2005 and her request not to be placed back in transport in 2008. [¶] Plaintiff stated that she mixed up the dates and year.  She clarified that her request to Guzman that she not to be [sic] placed in transit occurred in September or October of 2007."  Plaintiff, however, still contends her September 2007 demotion is not the only

---

[1] Even now, in opposition to Defendant's second motion for summary judgment or summary adjudication, Plaintiff provides no argument or evidence to suggest her administrative complaint was timely vis-a-vís the 2007 demotion or that an exception to the one-year limitations period applies.

5

adverse employment action supporting the discrimination claims: according to Plaintiff, the accusations she had had an inappropriate relationship with an inmate and given something of value to an inmate – which the Court treated as the adverse employment action underpinning Plaintiff's retaliation claim, *see Washington II, supra,* 2012 WL 1657579 at *11-*13 – could also be treated as an adverse employment action for the purposes of discrimination. The Court does not necessarily disagree with this proposition. Problematically for Plaintiff, treating the accusations as an adverse employment action in the discrimination analysis does not create triable issues of material fact.

"[T]o establish a prima facie case of discrimination, 'the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.' " *Washington II, supra,* 2012 WL 1657579 (quoting *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 355, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000)). Disregarding the FEHA statute of limitations bar, Plaintiff's September 2007 demotion could conceivably support a discrimination claim – as the Court found in its previous order, *see id*. at *8-*10 – because there was sufficient evidence in the record to suggest the demotion resulted from discriminatory motive. Plaintiff testified that Guzman communicated his dislike for Plaintiff and told Plaintiff, a black woman, that he did not like black women. *Id*. at *10. Plaintiff further testified that although she asked Guzman not to place her in transit, he placed her in transit anyway and ultimately demoted her after a lapse of attention resulting from drowsiness. *Id*. Based on this evidence, a reasonable trier of fact could conclude Plaintiff was demoted not because of drowsiness but because of Guzman's racial animus toward black women in general and Plaintiff in particular – i.e., that Plaintiff's demotion was caused by discrimination. The same cannot be said about the accusations made against Plaintiff.

Plaintiff testified she complained to another supervisor, Lieutenant Carpenter, about the discrimination she was experiencing from Guzman, and that after she complained to Carpenter, she was accused of having an inappropriate relationship with an unidentified inmate and giving away

6

something of value to that inmate. As the Court concluded in its order re: Defendant's first motion for summary judgment, the accusations could conceivably constitute an adverse employment action:

> " '[I]n order to establish either a discrimination or retaliation claim, "an employee must demonstrate that he or she has been subjected to an adverse employment action that materially affects the terms, conditions, or privileges of employment[.]" ' *Jones v. Lodge at Torrey Pines Partnership,* 42 Cal.4th 1158, 1168, 72 Cal.Rptr.3d 624, 177 P.3d 232 (2008) (quoting *Yanowitz* [*v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1051, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (2005)]) . . . . The evidence shows these [accusations] were the impetus behind the DOJ [Department of Justice] investigation, which concluded Plaintiff had had an inappropriate relationship with and given something of value to an inmate and recommended Defendant take disciplinary or adverse action against Plaintiff. The evidence further shows Defendant terminated Plaintiff because of the DOJ's findings. Regardless of whether the [accusations] were true or false, they clearly had adverse consequences for Plaintiff's employment."

*Washington II, supra,* 2012 WL 1657579 at *12. But while the evidence shows the accusations could constitute an adverse employment action, there is no evidence in the record to suggest the accusations were the result of any discriminatory motive Defendant or its employees may have had. The fact the accusations arose after Plaintiff complained to Carpenter does not establish motive. First, nothing suggests Carpenter harbored any racial animus toward Plaintiff. Second, nothing suggests Carpenter even had a role in making the accusations: As the Court explained in its previous order, "the only person to whom Plaintiff complained about Guzman's discriminatory conduct was Carpenter. There is no evidence to suggest Carpenter was a managerial employee or someone involved in making the accusations against Plaintiff, let alone initiating the DOJ investigation. Nor is there evidence to suggest Carpenter ever communicated Plaintiff's complaint to management or another employee who might have been in a position to accuse Plaintiff or set the investigation in motion . . . . Carpenter's knowledge of Plaintiff's complaint is not imputed to Defendant simply because he was Plaintiff's supervisor. *See Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928, 931-33 (7 th Cir. 1995))." *Washington II, supra,* 2012 WL 1657579 at *12. The fact the accusations arose after Plaintiff complained about Guzman's discriminatory conduct also does not establish motive: While Guzman may have harbored animus toward Plaintiff, as with Carpenter, there is no evidence to show he had a role in making the accusations or influenced the decision makers who did.

7

The only support for Plaintiff's contention the accusations were motivated by animus comes from Plaintiff's declaration, and that support is tenuous and speculative at best. In her declaration, Plaintiff testifies: "The allegation against me was that an inmate stated that someone named 'Ana' had a sexual relation with him. [¶] My name is Anita and not 'Ana.' I was not the only African American employee working for [Defendant] at that time and there was another employee named Ana Anderson also employed by [Defendant]. [¶] Despite this fact, I was singled out for investigations and harassment. No other employee was suspected by [Defendant] to be the one aiding the inmate and or [sic] investigated for the allegations made." From this, Plaintiff asserts a reasonable trier of fact could conclude the accusations were caused by discriminatory motive, the implication being that, in light of the foregoing circumstances, any explanation Defendant might offer as to why the accusations arose would be inherently unbelievable and that, as a result, the impetus behind the accusations must necessarily have been discrimination. Not so. Plaintiff's belief that she was "singled out for investigations and harassment" and that no other employee was suspected or investigated by Defendant cannot constitute evidence of discrimination. *See King v. United Parcel Service, Inc.,* 152 Cal.App.4th 426, 433, 60 Cal.Rptr.3d 359 (2007) ("plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations") (citing *Chiaramonte v. Fashion Bed Group, Inc., a Division of Leggett & Platt, Inc.,* 129 F.3d 391, 401 (7th Cir. 1997), and *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002)). "[P]laintiff's evidence must relate to the motivation of the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited motivation and [the adverse employment action.]" *Id.* at 433-34 (citing *Saelzler v. Advanced Group 400,* 25 Cal.4th 763, 774, 107 Cal.Rptr.2d 617, 23 P.3d 1143 (2001)). Plaintiff's declaration does not establish any link between the accusations and discriminatory motive.

At most, the declaration would go toward establishing pretext, which it fails to do for the simple reason it provides an incomplete picture of the record. By averring the "allegation against [her]" was "an inmate stated that someone named 'Ana' had a sexual relation with him," Plaintiff

8

implies this was the *only* accusation made. If this were the case, the fact Plaintiff is named Anita and there was another employee named Ana whom Defendant did not accuse might suggest any explanation Defendant could offer for the accusation was pretextual. But as the Court found in its previous order, this was not the case: Plaintiff was also accused of allowing the inmate to have additional meals without scanning his inmate identification card; providing the inmate with money in his inmate account; and kissing the inmate in his cell. *Washington II, supra,* 2012 WL 1657579 at *15. The evidence further showed the accusations arose because certain information was obtained from a recorded telephone call of the inmate, reliable inmate sources and observations of Plaintiff by other correctional officers. During the telephone call, the inmate stated the person who was going to put money in his account was a black female known as "Ana." *Id*. According to the report prepared by the DOJ, Defendant suspected Plaintiff because she was an African-American female and the only officer with a similar-sounding name working in the inmate's cell block. *Id*. In light of these facts, the statements made in Plaintiff's declaration cannot be sufficient to undermine the credibility of any explanation Defendant might offer for the accusations. Accordingly, the Court finds no triable issues of fact as to whether the accusations resulted from actionable discrimination.

With regard to the discrimination claims, Plaintiff contends as a final point there were instances of discrimination outside the FEHA limitations period that are nonetheless actionable under the continuing violations doctrine, an argument alluded to but not discussed in Plaintiff's opposition to Defendant's ex parte application. The Court expressed doubts about this argument:

> "Plaintiff . . . alludes to the continuing violation doctrine by contending that even if the September 2007 demotion were the only adverse employment action in this case, the discriminatory conduct resulting in that demotion continued to Plaintiff's termination. '[T]he continuing violation doctrine comes into play when an employee raises a claim based on conduct that occurred in part outside the limitations period.' *Richards v. CH2M Hill, Inc.,* 26 Cal.4th 798, 812, 111 Cal.Rptr.2d 87, 29 P.3d 175 (2001). For the doctrine to apply, 'at least one act [proscribed under FEHA] must occur *within* the limitations period.' *Thompson v. City of Monrovia,* 186 Cal.App.4th 860, 879, 112 Cal.Rptr.3d 377 (2010) (emphasis added). The employee must also show 'the employer's unlawful actions are (1) sufficiently similar in kind [to conduct occurring within the statutory period] . . . ; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence.' *Richards, supra,* at p. 823 (citations omitted). If Plaintiff intends to invoke the continuing violation doctrine, the Court would like some argument or evidence as to how it applies."

9

*Washington III, supra,* 2012 WL 1910099 at *3. Plaintiff has not addressed the Court's concern in her opposition to Defendant's second motion for summary judgment. Instead of providing argument or evidence to support application of the continuing violations doctrine, as the Court requested, Plaintiff simply offers a factual recitation of the case and contends conclusorily and without explanation that under the facts, the doctrine applies, leaving it for the Court to discern how this might be so. The Court is unable to do so even engaging in inferences most favorable to Plaintiff.

In the Court's view, the continuing violations doctrine is plainly *inapplicable* under the facts of this case. Thus far, Plaintiff has been able to show discriminatory animus from only one individual: Guzman. However, the evidence does not show Guzman discriminated against Plaintiff or was involved in any adverse action taken against Plaintiff *after* the September 2007 demotion. There is no evidence to suggest Guzman made discriminatory comments to Plaintiff after September or October 2007. There is no evidence to suggest Guzman was involved in accusing Plaintiff. There is no evidence to suggest Guzman participated in the DOJ investigation. There is no evidence to suggest Guzman caused Plaintiff's termination. Inasmuch as the evidence has been presented to the Court, Guzman's conduct effectively ended with Plaintiff's demotion, which occurred outside the one-year limitations period. Plaintiff has not established the existence of any discriminatory conduct within the limitations period, let alone impermanent conduct occurring with reasonable frequency and sufficiently similar to Guzman's pre-limitations-period conduct that could conceivably have constituted a continuation of Guzman's conduct under the three-pronged test of *Richards*. Consequently, Plaintiff's discrimination claims are barred for failure to file an administrative complaint within the FEHA statute of limitations, and summary adjudication of the causes of action for discrimination and failure to prevent discrimination must be granted in favor of Defendant.

***B. Workers' compensation exclusivity*** – Defendant further contends Plaintiff's claim for intentional infliction of emotional distress arises out of ordinary workplace conduct and is therefore barred under the exclusive workers' compensation remedies provisions of the California Labor Code, an

argument raised in its May 21, 2012 ex parte application. In its May 25, 2012 order directing the parties to brief a second round of summary judgment proceedings, the Court explained as follows:

> "An injured employee's 'sole and exclusive remedy . . . against [an] employer' is 'the right to recover [workers'] compensation,' provided certain conditions of compensation are met. Cal. Lab. Code, § 3602, subd. (a). '[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability. The basis of compensation and the exclusive remedy provisions is an injury sustained and arising out of the course of employment [citations], and when the essence of the wrong is personal physical injury or death, the action is barred by the exclusiveness clause no matter what its name or technical form if the usual conditions of coverage are satisfied. [Citation.]' *Cole v. Fair Oaks Fire Protections Dist.,* 43 Cal.3d 148, 160, 233 Cal.Rptr. 308, 729 P.2d 743 (1987). Thus, 'when the employee's claim is based on conduct normally occurring in the workplace, it is within the exclusive jurisdiction of the Workers' Compensation Appeals Board.' *Cole, supra,* at p. 151."

*Washington III, supra,* 2012 WL 1910099 at *3. The Court further explained:

> " 'The Legislature, however, did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices. [Citations.] [¶] Thus, a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices." ' *Murray v. Oceanside Unified School Dist.,* 79 Cal.App.4th 1338, 1362, 95 Cal.Rptr.2d 28 (2000) (quoting *Accardi v. Superior Court,* 17 Cal.App.4th 341, 352 21 Cal.Rptr.2d 292 (1993) (disapproved of on other ground by *Richards, supra,* 26 Cal.4th 798 (2001))) (emphasis omitted). 'Accordingly, where a plaintiff can allege that she suffered emotional distress because of . . . violations that were discriminatory, her cause of action for infliction of emotional distress will not be barred by the exclusivity provisions of workers' compensation laws. This is so because the claim is "founded upon actions that are outside the normal part of the employment environment . . . ." ' *Murray, supra,* 79 Cal.App.4th at 1363 (quoting *Accardi, supra,* 17 Cal.App.4th at 353); *see Gantt v. Sentry Insurance,* 1 Cal.4th 1083, 1101, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992) (overruled on other ground by *Green v. Ralee Engineering Co.,* 19 Cal.4th 66, 78 Cal.Rptr.2d 16, 960 P.2d 1046 (1998)) (the ' "compensation bargain" cannot encompass conduct, such as . . . racial discrimination, "obnoxious to the interests of the state and contrary to public policy and sound morality" ')."

*Id.* The Court further explained:

> "In its May 9, 2012 order denying Defendant's motion for summary judgment, the Court noted that discrimination in the workplace, if sufficiently alleged, could constitute outrageous conduct for purposes of a claim for intentional infliction of emotional distress. [Citations.] Defendant presented no argument or evidence to meet its initial burden of demonstrating the absence of genuine issues of material fact as to emotional distress other than to contend, without merit, that Plaintiff's claim arose

11

>out of ordinary personnel and management decisions that were neither extreme nor outrageous as a matter of law. As a result, because the Court found Plaintiff had met her burden to show genuine issues of material fact as to actionable discrimination, [citation], the Court concluded the emotional distress claim survived summary judgment. [Citation.] Because the emotional distress claim arises out of discrimination, it is not barred by the workers' compensation exclusivity rule."

*Washington III, supra,* 2012 WL 1910099 at *4. That the discrimination claim will now be dismissed for Plaintiff's failure to file an administrative complaint within the one-year statute of limitations for exhaustion of administrative remedies under FEHA does not provide a basis for dismissal of the emotional distress claim because, irrespective of the statute of limitations issue, the Court found there were triable issues of material fact as to discrimination. To dismiss an emotional distress claim simply because the underlying discrimination claim is being dismissed on statute of limitations grounds, the Court previously explained, would be contrary to the law:

>"In contrast to Plaintiff's cause of action for discrimination, which – as a statutory FEHA claim – is subject to the exhaustion requirement, *Grant v. Comp USA, Inc.,* 109 Cal.App.4th 637, 645, 135 Cal.Rptr.2d 177 (2003), Plaintiff's cause of action for emotional distress – as a common law claim – is not. *Rojo v. Kliger,* 52 Cal.3d 65, 82-88, 276 Cal.Rptr. 130, 801 P.2d 373 (1990) (claim for intentional infliction of emotional distress arising out of workplace discrimination not subject to FEHA exhaustion requirement). Indeed, to dismiss an emotional distress claim premised on discrimination where the underlying discrimination claim [is] dismissed not because of a lack of triable issues but administrative noncompliance . . . would be akin to grafting an exhaustion requirement onto a common law cause of action. Such a result would effectively circumvent the mandates of *Rojo, supra.*"

*Id*. Accordingly, Plaintiff's cause of action for intentional infliction of emotional distress remains operative against Defendant. Defendant has provided no argument or evidence in its second motion for summary judgment or summary adjudication to compel a different result. Defendant simply reiterates its argument that Plaintiff's emotional distress claim is barred by the workers' compensation exclusivity rule because it stems from "ordinary workplace conduct that was not extreme and outrageous[.]" Defendant has provided no authority – and the Court's research reveals no authority – to support this proposition. As the Court has already explained, Plaintiff's emotional distress is premised upon Guzman's unlawful discrimination, *see Washington II, supra,* 2012 WL 1657579 at *10, *16, and discrimination is hardly "ordinary workplace conduct." Therefore, summary adjudication of the emotional distress claim must be denied.

12

## IV. DISPOSITION

Based on the foregoing, the second motion of defendant CCA of Tennessee, LLC for summary judgment is DENIED. Summary adjudication in favor of defendant CCA of Tennessee, LLC is GRANTED as to the first and third causes of action for discrimination and failure to prevent discrimination, respectively. Summary adjudication is DENIED as to the fifth cause of action for intentional infliction of emotional distress.

The Court refers the case to the Magistrate Judge for a trial-setting conference.

The hearing date of July 9, 2012 is hereby VACATED.

IT IS SO ORDERED.

Dated:   July 2, 2012

CHIEF UNITED STATES DISTRICT JUDGE

13